1  PAUL B. SNYDER
United States Bankruptcy Judge
2  1717 Pacific Ave, Suite 2209
Tacoma, WA 98402
3

4
✓  FILED
____LODGED
____RECEIVED

**March 5, 2010**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

5

6

7

8

9

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

10  In re:                                                    Case No. 09-43978

11  SYMONS FROZEN FOODS INC.,                  **MEMORANDUM DECISION**

12                          Debtor.

13      THIS MATTER came before the Court on February 11, 2010, on the Joint Motion of Inn Foods,

14  Inc. (Inn Foods) and Watts Bros. Frozen Foods, LLC d/b/a/ Watts Brothers Farm (Watts) to Determine

15  Validity and Priority of PACA Trust Claims.  Objections were filed by Symons Frozen Foods, Inc.

16  (Debtor) and Marquette Business Credit, Inc. (Marquette).  At the conclusion of the hearing, the Court

17  took the matter under advisement.  This Memorandum Decision shall constitute Findings of Fact and

18  Conclusions of Law as required by Fed. R. Bankr. P. 7052.  This is a core proceeding under 28 U.S.C.

19  § 157(b)(2).  The parties, pursuant to the Court's Order Granting Motion to Approve Procedures for

20  Administering Agricultural Lien Claims, waived the procedural requirements of Fed. R. Bankr. P. 7001

21  and requested that a summary disposition be made pursuant to Fed. R. Bankr. P. 7056.

22                  **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

23      The Debtor is a frozen foods purchasing, packaging, and distribution business located in

24  Centralia, Washington.  Its principal business operation consists of contracting with food growers to

25  purchase agricultural product, processing and packaging the product upon receipt, and later selling the

MEMORANDUM DECISION - 1

processed product to customers.  Watts and Inn Foods are two creditors that contracted with the Debtor to grow agricultural product for sale to the Debtor.

On August 7, 2008, and September 5, 2008, Watts entered into two separate agreements to sell corn to the Debtor.  In accordance with the contracts, the Debtor agreed to harvest and transport the corn from Watts's field to the Debtor's processing plant.  Both the September contract and the August contract provided for payment to be made by Watts in three installments on the dates of November 15, 2008, February 28, 2009, and March 31, 2009.  The corn was delivered on August 7, 8, 9, 10, 11, 12, 30, 31, 2008, and on September 1, 2, 3, and 5, 2008.  Watts also offers, as evidence of the transactions with the Debtor, invoices for the sale of sweet corn: one dated September 3, and two dated September 19, 2008.  Unlike the contracts, these invoices did not provide the date payment was due for the produce delivered.  The Debtor failed to pay Watts under the contracts.  The amount of Watts's claim resulting from the Debtor's failure to pay is $235,811.22.  Watts did not argue in its briefing, or at hearing, that it is owed attorney's fees or interest on its claim.

Between March 31, and June 18, 2009, Inn Foods supplied peas, beans, and carrots to the Debtor on credit.  All produce was accepted by the Debtor.  The Debtor, however, did not pay the amount owed to Inn Foods for these purchases.  Evidence of Inn Foods' credit terms for each unpaid delivery of produce includes invoices that bore the notation "NET 30" under the "terms" column, and a letter dated May 7, 2008 (May 2008 Letter), sent by Inn Foods to the Debtor.  The letter explained that Inn Foods' credit terms "are NET THIRTY- (30) DAYS AFTER RECEIPT (TRANSFER OF TITLE) FOR EACH SHIPMENT."  The letter requested that the Debtor "acknowledge this agreement by signing and faxing" it to Inn Foods.  The Debtor's president, William James, signed the letter and faxed it to Inn Foods on May 7, 2008.  Inn Foods also placed an attorney's fees clause at the bottom of each invoice, which stated that buyer agrees to "attorney's fees and costs" in the event of collection, "as additional sums owed in connection with this transaction."  Below the invoice total, language stated that "[a] late payment charge at the maximum legal rate will be made on invoices 30 days or more past due!"  The Debtor and Inn Foods stipulate to the fact that the principal amount of Inn Foods' unpaid claim totals

MEMORANDUM DECISION - 2

1  $152,879.28. Inn Foods, on the basis of the language placed on its invoices, requests attorney's fees,

2  costs, and interest as a part of its claim.

3        On June 3, 2009, the Debtor filed a voluntary Chapter 11 bankruptcy petition. Since then, it

4  has been operating as a debtor-in-possession. In response to the Court's Order Granting Motion to

5  Approve Procedures for Administering Agricultural Lien Claims, Inn Foods and Watts submitted

6  applications for allowance of produce claims. Both creditors submitted their claims as federal trust

7  claims pursuant to the Perishable Agricultural Commodities Act (PACA).[1] Inn Foods and Watts then

8  moved the Court to determine the validity and priority of their individual claims. The primary issues

9  presented to the Court are (1) whether Watts and Inn Foods hold valid PACA claims; (2) if this Court

10  determines that Inn Foods is a PACA trust beneficiary, whether its claim includes attorney's fees,

11  costs, and interest.

12        Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on

13  file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

14  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be

15  granted if, after taking all reasonable inferences in the nonmoving party's favor, the Court finds that no

16  reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255

17  (1986). The party seeking summary judgment bears the burden of demonstrating that there are no

18  genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex

19  Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party may not rest upon mere

20  allegations or denials of his or her pleadings, but must set forth specific facts showing that there is a

21  genuine issue for trial. Anderson, 477 U.S. at 256. In this case, the parties have made no allegation

22  in their pleadings, or at hearing, that there is a disputed issue of material fact. Rather, the Debtor and

23  Marquette have objected to the motion on the basis that Watts and Inn Foods are not PACA trust

24  beneficiaries as a matter of law.

25

[1] 7 U.S.C. §§ 499a-499s (2006).

MEMORANDUM DECISION - 3

**A. Perishable Agricultural Commodities Act**

PACA was enacted by Congress in 1930 "to regulate the sale of perishable commodities and promote fair dealing in the sale of fruits and vegetables." Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 413 (5th Cir. 2003) (internal quotations omitted). It requires, for example, licensing of entities that are commission merchants, dealers, and brokers. 7 U.S.C. § 499c. It also requires that buyers of perishable agricultural commodities make "full payment promptly" to sellers of perishable agricultural commodities. 7 U.S.C. § 499b(4). The buyer's failure to make "full payment promptly" creates civil liability in favor of the injured seller. 7 U.S.C. § 499e(a).

In 1984, Congress added § 499e(c)(2)[2] to increase PACA's protection of sellers of perishable commodities on short-term credit from insolvent or unscrupulous dealers, brokers, or merchants. Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 631 (11th Cir. 2004). That subsection creates a nonsegregated "floating" trust, which attaches to the perishable agricultural commodities upon delivery, as well as any proceeds of such commodities. 7 U.S.C. § 499e(c)(2). In the event the buyer fails to pay the seller, "the buyer must preserve trust assets, and the seller has a 'superpriority' right that trumps the rights of the buyer's other secured and unsecured creditors." Bocchi Ams. Assocs., Inc. v. Commerce Fresh Mktg., Inc., 515 F.3d 383, 388 (5th Cir. 2008) (citing Reaves, 336 F.3d at 413). Because the buyer holds produce *in trust* for the seller until repayment is complete, when the buyer files for bankruptcy the produce or its proceeds do not become property of the estate. Sysco Food Servs. of Seattle, Inc. v. Country Harvest Buffet Rests., Inc. (In re Country Harvest Buffet Rests., Inc.), 245 B.R. 650, 653 (9th Cir. B.A.P. 2000). Both parties argue that they are entitled to PACA trust claims under 7 U.S.C. § 499e(c) for the amounts owing under their contracts with the Debtor. The amounts of their claims, if valid, would not be property of the Debtor's Chapter 11 estate.

---

[2] "Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions . . . shall be held . . . in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents." 7 U.S.C. § 499e(c)(2).

MEMORANDUM DECISION - 4

1        A PACA claimant must establish the following three elements in order to become a valid PACA

2  trust beneficiary: (1) the produce in question must be "perishable agricultural commodities"; (2) the

3  commodities must have been received by a commission merchant, a dealer, or broker; and (3) the

4  claimant must have provided written notice of its intent to preserve its rights under PACA within 30

5  days after payment became due. Country Harvest Buffet, 245 B.R. at 353. In this case, Watts and Inn

6  Foods have satisfied the first two elements of their PACA claim. The Debtor qualifies as a dealer

7  under 7 U.S.C. § 499a(b)(6)[3] because it holds a valid PACA license, and both creditors provided

8  perishable agricultural commodities[4] to the Debtor. These elements were not disputed by Marquette

9  or the Debtor. As to the third element, Inn Foods and Watts argue they provided notice to the Debtor

10  by using the "invoice method." The invoice method is achieved by "licensees" (entities that hold a valid

11  PACA license), where they include the requisite PACA trust language[5] on the face of ordinary or usual

12  billing or invoice statements. 7 U.S.C. § 499e(c)(4). Watts and Inn Foods included evidence in their

13  briefings that the statutorily required language was placed on their respective invoices. It is settled

14  that Watts and Inn Foods provided the requisite notice on their invoices within 30 days of payment

15  becoming due. The parties, however, contest whether their agreed-upon due dates forfeited their right

16  to a PACA trust claim.

17        The benefits of PACA are available to Watts and Inn Foods only if they met its strict notice

18  requirement by supplying notice of intent to preserve the benefits of the trust within 30 days after

19  payment became "due." PACA generally requires that the buyer make "full payment promptly" to the

20

21  [3] "Any person . . . may elect to secure a license under the provisions of section 499c of this title, and while the license is in effect such person shall be considered as a 'dealer.'" 7 U.S.C. § 499a(b)(6).

22

23  [4] Perishable agricultural commodities include fresh fruits and vegetables of any kind, regardless of whether they are packaged, or frozen in ice. 7 U.S.C. § 499a(b)(4)(A).

24  [5] "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these

25  commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." 7 U.S.C. § 499e(c)(4).

MEMORANDUM DECISION - 5

buyer, and the regulations set forth that the default payment due date for a buyer of produce is ten days after acceptance of the produce. 7 C.F.R. § 46.2(aa)(5). The parties, however, may agree to make payment due on a different date as long as they reduce their agreement to writing. 7 C.F.R. § 46.2(aa)(11). Thus, payment was "due" in this case within 30 days of the expiration of the time payment had to be made "as the parties . . . expressly agreed to in writing before entering into the transaction." 7 U.S.C. § 499e(c)(3). However, the maximum payment period that a buyer and seller may agree to is 30 days from receipt and acceptance of the commodities. 7 C.F.R. § 46.46(e)(2). Thus, in order for Watts and Inn Foods to qualify for protection as PACA trust beneficiaries, they must not have agreed to a payment due date beyond 30 days after the Debtor's receipt and acceptance of the commodities. This limitation ensures that the benefits of PACA apply only to sellers of perishable agricultural commodities on short-term credit.

Additionally, while the PACA statute and regulations refer to an agreement to extend payment terms that is made *prior* to the transaction, circuit courts that have considered this issue have uniformly held that the 30-day limit applies to post-transaction agreements as well. See Bocchi, 515 F.3d at 389; Am. Banana Co., Inc. v. Republic Nat'l Bank of New York, 362 F.3d 33, 43-44 (2d Cir. 2004); Overton Distribs., Inc. v. Heritage Bank, 340 F.3d 361, 366-68 (6th Cir. 2003); Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc., 307 F.3d 666, 669-71 (7th Cir. 2002); Greg Orchards & Produce, Inc. v. Roncone, 180 F.3d 888, 892 (7th Cir. 1999); Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197, 208-09 (3d Cir. 1998); Tom Lange Co. v. Lombardo Fruit and Produce Co. (In re Lombardo Fruit & Produce Co.), 12 F.3d 806, 809-10 (8th Cir. 1993). Thus, even if the notice given by Watts and Inn Foods of their intent to preserve their rights under PACA was made within 30 days of payment becoming due under their separate agreements, they do not qualify for coverage under the trust if their payment due dates were agreed, before or after the transactions, to be beyond 30 days of Debtor's receipt and acceptance of the produce.

MEMORANDUM DECISION - 6

**B. The PACA Claim of Watts**

The Debtor argues that Watts's PACA claim should be denied because its contracts with the Debtor provided that payment was due beyond 30 days after receipt and acceptance of the produce. Watts's corn was delivered to the Debtor on 12 separate days, beginning August 7, 2008, and ending September 5, 2008. Because the contracts provided that payment was to be made in three installments beginning on November 15, 2008, payment was due beyond 30 days of the Debtor's receipt and acceptance of the produce. Watts therefore does not qualify as a PACA trust beneficiary.

The Court is not persuaded by Watts's argument that the payment provision contained in its contracts with the Debtor is unenforceable because it violates 7 C.F.R. § 46.46(c)(2), requiring that any waiver of PACA trust protection must be memorialized in a separate contract. Initially, 7 C.F.R. § 46.46(c)(2) contemplates a *waiver* of PACA trust protection. In this instance, because the contract payment due dates fall more than 30 days after acceptance of the commodities, Watts does not qualify for PACA trust protection. Watts cannot waive protection that it is not first afforded by the statute. Secondly, § 46.46(c)(2) pertains to waiver by a licensee "who has a fiduciary duty to collect funds resulting from the sale or consignment of produce, and remit such funds to its principal." 7 C.F.R. § 46.46(c)(2). No such relationship exists in this case. Watts entered into an agreement with the Debtor for the *sale* of sweet corn. The Debtor was not the agent of Watts, and Watts was not the principal of the Debtor. The implication of Watts's reasoning is that every seller of perishable agricultural commodities to a licensee becomes a trust beneficiary regardless of the payment terms. The code provision cited by Watts reads that the waiver "must be separate and distinct *from any agency contrac*t" and that it "must be signed by the principal *prior to the time affected transactions occur.*" 7 C.F.R. § 46.46(c)(2) (emphasis added). This language clearly indicates that the separate writing requirement applies in the context of an agency relationship that arises before the transaction that creates the PACA trust, not in the context of the fiduciary duty that is created by a transaction that meets elements required to establish a valid PACA trust claim under 7 U.S.C. § 499e(c)(2). Despite Watts's efforts to provide notice via the "invoice method," it simply never became a PACA trust

MEMORANDUM DECISION - 7

beneficiary because payment under the contract was due more than 30 days after delivery and acceptance of the commodities.  The Court concludes that Watts is not a PACA trust beneficiary and that it does not have a valid PACA claim.

**C. The PACA Claim of Inn Foods**

Inn Foods, like Watts, placed the requisite statutory language on the face of each invoice provided to the Debtor.  Such notice was given before the Debtor's payment due date agreed to by the parties.  The issue is whether Inn Foods forfeited its PACA trust protection by agreeing either (1) pre-transaction, to a due date beyond the 30-day maximum imposed by 7 C.F.R. § 46.46(e)(2); or (2) post-default, to extend the originally-compliant due date beyond the 30-day maximum.

Inn Foods, in support of its argument that the Debtor's due date did not exceed the maximum 30 days, points to the notations "NET 30" and "Delivered" on its invoices.  Inn Foods contends that for "delivered" sales, title transferred upon delivery of the goods to the Debtor, and that, consistent with its May 2008 Letter, its credit terms were "NET Thirty- (30) DAYS AFTER RECEIPT (TRANSFER OF TITLE) FOR EACH SHIPMENT."  For F.O.B. sales, credit terms began on the date of shipment. According to Inn Foods, in both cases the Debtor's payment was due at or before the maximum of 30 days from receipt and acceptance of the commodities.

The Debtor and Marquette do not contest the meaning of the payment terms contained on Inn Foods' invoices.  Rather, as the Court understands from briefings and arguments at the hearing, the Debtor and Marquette attack Inn Foods' PACA trust claim on the following two grounds: (1) that Inn Foods and the Debtor agreed in the May 2008 Letter to a payment due date beyond the 30 day maximum imposed by 7 C.F.R. § 46.46(e)(2); and (2) that Inn Foods waived any PACA protection because the Debtor "historically made payments to Inn Foods and Inn Foods agreed to accept payment more than 30 days after delivery of the product to debtor."  (Debtor's Resp. 4, Dkt. #481.)

**(1) The May 2008 Letter**

While the Debtor does not offer a written agreement in which Inn Foods expressly extends the Debtor's payment due dates beyond the 30-day maximum, the Debtor interprets the May 2008 Letter

MEMORANDUM DECISION - 8

1    as an agreement to continue the practice of accepting payments from the Debtor more than 30 days

2    after the Debtor's acceptance of the produce.  Thus, the Court must decide whether Inn Foods'

3    practice of accepting payment from the Debtor more than 30 days after the Debtor's acceptance of the

4    produce, in conjunction with the May 2008 Letter, abrogates Inn Foods' PACA protection.  The Debtor

5    relies on the language in the May 2008 Letter stating that "this letter agreement is a Federal

6    requirement, and is not to be considered a letter of demand or a change in the current policies and

7    practices of our company."  (Decl. James, Ex. C., Dkt. #481.)  According to the Debtor's interpretation

8    of the May 2008 Letter, Inn Foods, in referencing its "current policies and practices," acknowledges its

9    historical practice of accepting late payments, and agrees to continue to accept late payments from the

10   Debtor.

11        The Court is unable to construe the May 2008 Letter as either a written agreement establishing

12   payment terms beyond 30 days, or as evidence of an oral agreement to extend the Debtor's payment

13   due date beyond 30 days.  The letter's plain language indicates that it was Inn Foods' intent to

14   establish a written agreement to payment terms that differed from the default "prompt payment" due

15   date of ten days provided by 7 C.F.R. § 46.2(aa)(5).  Inn Foods explained in the letter that its credit

16   terms are NET 30. It did not, at the same time, agree to extend those terms.[6]  A normal reading of the

17   letter belies the Debtor's argument that this language somehow represents either a written agreement

18   itself, or Inn Foods' acknowledgement of an agreement, oral or otherwise, to extend the Debtor's

19   payment due date.   To accept the Debtor's argument, the Court must interpret the letter as

20   contradicting itself: on the one hand, stating that Inn Foods' credit terms are "NET 30," but on the other

21   hand, agreeing to separate terms as defined by the course of dealing of the company and referenced

22   _____

23   [6] The letter states: "To obtain protection under P.A.C.A. Trust regulation, we are required to inform you in writing
     of our credit terms if they differ from P.A.C.A. 'prompt pay regulations' which require payment no more than 10
24   days after receipt and acceptance by you of goods sold and delivered.  Our credit terms are NET THIRTY- (30)
     DAYS AFTER RECEIPT (TRANSFER OF TITLE) FOR EACH SHIPMENT. For F.O.B. sales, credit terms begin
     on the date of shipment. When sold on a 'Delivered' basis, credit terms begin on the date the product is received
25   by the buyer. The date of the transfer of title is the key. . . . This letter agreement is a Federal requirement, and is
     not to be considered a letter of demand or a change in the current policies and practices of our company." (Decl.
     James, Ex. C, Dkt. #481.)

MEMORANDUM DECISION - 9

1   only ambiguously through its wording that the letter is not a "change in the current policies and

2   practices of our company." The Court is unwilling to accept such an unreasonable interpretation.

3          Furthermore, the letter was sent to the Debtor prior to the transactions that give rise to Inn

4   Foods' PACA claim. In order for the Court to hold in favor of the Debtor and Marquette, it would have

5   to conclude that the May 2008 Letter's reference to "policies and practices" governed payment terms

6   for all future transactions despite the fact that Inn Foods placed the terms NET-30 on each invoice,

7   and in contradiction of the plain language of the letter itself. At the hearing, the Debtor argued that

8   under the Uniform Commercial Code, Inn Foods' course of dealing should give meaning to the terms

9   of the May 2008 Letter. See RCW § 62A.1-205(3). According to the Debtor, the May 2008 Letter

10  incorporated Inn Foods' acceptance of late payments and became a "written agreement" between Inn

11  Foods and the Debtor to extend the Debtor's payment due date. The Debtor's argument fails because

12  under RCW § 62A.1-205(3), a course of dealing supplements or qualifies terms of an agreement.

13  Here, the terms are unambiguous and leave little room for qualification. Moreover, under RCW

14  § 62A.1-205(4), the express terms of the May 2008 Letter and the parties' course of dealing "shall be

15  construed wherever reasonable as consistent with each other; but when such construction is

16  unreasonable" the express terms of the agreement control course of dealing. RCW § 62A.1-205(4).

17  Because the May 2008 Letter's express terms are inconsistent with Inn Foods' course of dealing, the

18  express terms of the letter agreement control.

19         The Court determines that the May 2008 Letter does not evidence a written agreement

20  between Inn Foods and the Debtor to establish, or extend, the Debtor's payment due date beyond the

21  maximum of 30 days from the Debtor's acceptance of the produce. The letter had the opposite effect:

22  it established payment terms, in a separate written agreement, that varied from the "prompt payment"

23  default of ten days, but that were within the 30-day maximum. This satisfied the requirements of 7

24  C.F.R. § 46.46(e). Accordingly, the Debtor is left with only Inn Foods' course of dealing to support its

25  argument that Inn Foods forfeited its right to a PACA trust claim.

MEMORANDUM DECISION - 10

**(2) Course of Dealing**

The Debtor offers its payment history as evidence indicating that Inn Foods accepted payments from the Debtor that were consistently made beyond the 30-day terms specified by Inn Foods' invoices and the May 2008 Letter. The Debtor relies on Inn Foods' historical practice of accepting late payments in support of its argument that Inn Foods waived its PACA trust claim based on a post-default agreement to extend the due date beyond 30 days in violation of 7 C.F.R. § 46.46(e)(2). According to the Debtor, even if Inn Foods initially qualified as a PACA trust beneficiary, it later waived its protection based on its post-default course of dealing.

A majority of courts have held that a post-default agreement extending payment terms beyond the 30-day maximum must be in writing in order to abrogate a PACA trust. Bocchi, 515 F.3d at 390-91; Patterson, 307 F.3d at 669-70; Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 781 (8th Cir. 1991); DiMare Homestead, Inc., v. Dixie Produce & Packaging, L.L.C. (In re Dixie Produce & Packaging, L.L.C.), 368 B.R. 533, 538 (Bankr. E.D. La. 2007). The Seventh Circuit Court of Appeals (Seventh Circuit) in Patterson held that a "written agreement," in order to waive PACA, may be comprised of informal writings sufficient to satisfy the Statute of Frauds. Patterson, 307 F.3d at 671. Other courts that have confronted the issue have also held that informal writings satisfying the Statute of Frauds may establish a "written agreement." See e.g., Bocchi, 515 F.3d at 391; Am. Banana, 362 F.3d at 47. While a written agreement to extend payment terms will abrogate a PACA trust, courts have generally concluded that both an oral agreement and a course of dealing allowing for the extension of credit beyond the 30-day maximum imposed by § 46.46(e)(2) are ineffective to abrogate a PACA trust. See e.g., Bocchi, 515 F.3d at 390-91; Patterson, 307 F.3d at 669 (citing Idahoan Fresh, 157 F.3d at 205; Hull Co., 924 F.2d at 781-82); Lombardo, 12 F.3d at 811; see also In re Cafeteria Operators, L.P., 299 B.R. 411, 415-16 (Bankr. N.D. Tex. 2003). But see Am. Banana, 362 F.3d at 47 (holding that an oral agreement may forfeit the protection of the PACA trust).

Marquette relies on American Banana in arguing that Inn Foods waived its right to a PACA trust claim. In American Banana, the Second Circuit Court of Appeals (Second Circuit) concluded that

MEMORANDUM DECISION - 11

the "failure to reduce to writing an agreement that violates PACA, should not result in the preservation of the trust, where the same agreement, if memorialized, would have resulted in forfeiture of such protection." Am. Banana, 362 F.3d at 46-47. Thus, unlike other circuit courts that have confronted the issue, the Second Circuit held that an oral agreement to extend the buyer's payment due date beyond 30 days is sufficient to abrogate a PACA trust. Am. Banana, at 47 ("we hold that where, as here, a seller agrees-orally or in writing-to a payment period exceeding thirty days, it forfeits trust protection"). However, the Second Circuit did not specifically consider whether a course of dealing, alone, would be sufficient to waive PACA. Thus, while Marquette cites the Second Circuit's holding in American Banana in support of its objection to Inn Foods' PACA trust claim, it directly applies to the facts of this case only if the Court establishes that there was an agreement of some kind, either written or oral, between Inn Foods and the Debtor to extend the Debtor's payment due date beyond 30 days of the Debtor's receipt and acceptance of the commodities. As stated earlier, the Court does not find that such a written or oral agreement exists in this case.

The Court concludes that Inn Foods' practice of accepting late payments from the Debtor does not abrogate Inn Foods' right to a PACA trust claim. This holding is consistent with the other courts that have faced this issue and held that a "course of dealing" extending a buyer's payment due date does not prevent the seller from being entitled to the PACA trust. Lombardo, 12 F.3d at 810; A & J Produce Corp. v. CIT Group/Factoring, Inc., 829 F. Supp. 651, 655 (S.D.N.Y. 1993) (also holding that an oral agreement is insufficient to waive PACA); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F. Supp. 209, 211-12 (E.D.N.Y. 1993).

The Eighth Circuit Court of Appeals' (Eighth Circuit) analysis in Lombardo, of a factual situation similar to the one before this Court, is instructive. In that case, the Eighth Circuit concluded that a factual finding by the bankruptcy court that a written agreement between the buyer and seller was a "sham," because the debtor was paid within 30 days only once, was irrelevant to the PACA trust analysis. Lombardo, 12 F.3d at 810. The court stated that the underlying agreement was valid and met PACA trust requirements. According to the court, the fact that the seller did not demand payment

MEMORANDUM DECISION - 12

in the past did not invalidate the contract. It reasoned that PACA "does not impose an obligation on the seller to diligently enforce the agreement by . . . filing suit, filing for trust protection, or terminating business relations." Lombardo, 12 F.3d at 810-11. The Eighth Circuit also relied on its holding in Hull Co., that only a written extension can validly extend payment terms beyond those specified in the parties' original agreement. Lombardo, 12 F.3d at 811 (stating that if an express oral agreement cannot extend payment terms, something less, such as course of dealing, must be ineffective as well). Lastly, the court reasoned that PACA trust provisions should be interpreted similarly to the provision it was modeled after: the Packers and Stockyards Act[7] (PSA). Because course of dealing is not relevant to a PSA trust analysis, according to the Eighth Circuit, it should also not be relevant to the PACA trust analysis. Lombardo, 12 F.3d at 811 (citing First State Bank of Miami, v. Gotham Provision Co. (In re Gotham Provision Co.), 669 F.2d 1000, 1007 (5th Cir. Unit B 1982), cert. denied, 459 U.S. 858 (1982)).

In this case, the Debtor and Marquette would have the Court believe that Inn Foods' credit policy, as stated on its invoices and explanation of its credit terms in the May 2008 Letter, was a "sham." Nevertheless, the Court is unwilling to hold, without the existence of an express agreement between the parties, that Inn Foods waived its right to a PACA trust claim. Inn Foods should not be penalized by the Court for its strategic decision not to terminate business relations with the Debtor or immediately sue under the contract. Thus, the Court concludes that Inn Foods' practice of accepting late payments from the Debtor is not controlling in the PACA trust analysis. In so doing, this Court finds the Lombardo court's reasoning persuasive and although there is no controlling Ninth Circuit Court of Appeals (Ninth Circuit) precedent, the Court follows the reasoning of the other courts in rejecting Debtor's argument that Inn Foods' PACA trust claim may be abrogated by a course of dealing alone. Marquette and the Debtor do not assert, nor present evidence, that the parties made a post-transaction oral agreement to extend the Debtor's payment due date. Thus, the Court does not need

---

[7] 7 U.S.C. §§ 196-97 (1988).

MEMORANDUM DECISION - 13

1  to consider, as the Second Circuit did, whether an oral agreement is sufficient to waive PACA

2  protection.  The Court is troubled by the fact that Inn Foods consistently accepted the Debtor's

3  delinquent payments and yet benefited from a statute intended to protect sellers on short-term credit.

4  Nonetheless, the prevailing case law is that a mere course of dealing is insufficient to abrogate a

5  PACA trust claim.

6  **D. Attorneys Fees and Interest**

7  Since the Court concludes that Inn Foods holds a valid PACA trust claim, it must also

8  determine whether attorney's fees, costs, and interest are included as a part of that claim.  The Ninth

9  Circuit held in Middle Mountain Land and Produce Inc., v. Sound Commodities Inc., 307 F.3d 1220

10  (9th Cir. 2002), that a seller's contractual right to attorney's fees and interest is included within a valid

11  PACA claim, relying on the language in the statute which provides that the PACA trust arises "until full

12  payment of the sums owing in connection with the transaction have been received." Middle Mountain,

13  307 F.3d at 1224 (citing 7 U.S.C. § 499e(c)(2)).  If it was Congress's intent to limit PACA claims to the

14  price of the commodities, it could have inserted language in 7 U.S.C. § 499e(c)(2) reflecting such a

15  limitation. Country Best, M&M v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir. 2004).

16  Instead, Congress elected to provide for "*full payment of the sums owing in connection with*

17  *[commodities] transaction.*' This unambiguously encompasses not only the price of commodities but

18  also additional related expenses. Such related expenses include attorney fees and interest that buyers

19  and sellers have bargained for in their contracts." Country Best, M&M, 361 F.3d at 632 (citing Middle

20  Mountain, 307 F.3d at 1223).  Thus, a contractual claim to attorney's fees and interest will be included

21  in Inn Foods' valid PACA claim.

22  Inn Foods' contractual basis for attorney's fees and costs is contained in the following language

23  on the face of each invoice below the PACA statutory language: "In the event collection action

24  becomes necessary, buyer agrees to pay all costs of collection including attorney's fees and costs, as

25  additional sums owed in connection with this transaction." (Inn Foods' Application for Allowance of

Produce Claim 6-23, Dkt. #379.)  Its claim to interest is made on the basis of language near the

MEMORANDUM DECISION - 14

"invoice total" where Inn Foods stated that "late payment charge at the maximum legal rate will be made on invoices 30 days or more past due!" Neither Marquette nor the Debtor argued that the provisions placed on the invoices were not part of the contract with Inn Foods. Because this issue is not contested, the Court finds that Inn Foods holds a contractual right to interest, attorney's fees, and costs.

Since Inn Foods has a contractual right to attorney's fees and interest, under Middle Mountain, such terms are included in its valid PACA claim. While the Ninth Circuit in Middle Mountain did not specifically consider, under the facts of that case, whether a contractual right to *costs* was included in a valid PACA claim, it determined that the plain meaning of the statute's "in connection with" language applies to all "additional related expenses," not just attorney's fees and interest. Middle Mountain, 307 F.3d at 1222. Costs, like attorney's fees, are properly treated as an expense owed in relation to the underlying transaction. Inn Foods holds a contractual right to such costs, having bargained for them as a part of its contract with the Debtor. The Court finds no reason to treat costs differently from attorney's fees or interest in the context of a PACA claim. Costs, as "sums owing in connection" with the PACA transaction, are therefore included as part of Inn Foods' valid PACA claim. Thus, Inn Foods is entitled to a valid PACA claim in the amount of $152,879.28 plus attorney's fees, interests, and costs, in an amount to be determined upon further application to the Court.

**E. Conclusion**

In summary, the Court determines that Watts does not have a valid PACA claim for amounts owed by the Debtor under its corn contracts. Inn Foods has a valid PACA claim in the amount of $152,879.28 plus attorney's fees, costs, and interest. The Court will determine the amount of attorney's fees, costs, and interest upon further application by Inn Foods.

DATED:    March 5, 2010

*Paul B. Snyder*

—————————————————————————
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 15