PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

April 2, 2010

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>SYMONS FROZEN FOODS INC.,<br><br>            Debtor. | Case No. 09-43978<br><br>**MEMORANDUM DECISION** |

      THIS MATTER came before the Court on January 4, 2010, and March 11, 2010, on Rick L. Hale Farms, Inc.'s (Hale Farms) Second Motion to Compel Payment to Rick L. Hale Farms, Inc. Objections to the Motion were filed by Symons Frozen Foods Inc., (Debtor); Inn Foods, Inc. (Inn Foods) and Watts Bros. Frozen Foods, LLC d/b/a Watts Brothers Farms (Watts); the Official Committee of Unsecured Creditors (Committee); and Marquette Business Credit, Inc. (Marquette). At the conclusion of the hearings, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      The Debtor is a frozen foods purchasing, packaging, and distribution business located in Centralia, Washington. The Debtor's principal business operation consists of contracting with food producers to purchase agricultural product and then processing, packaging, freezing, and selling the processed product to customers. Hale Farms entered into a prepetition contract (Corn Agreement)

MEMORANDUM DECISION - 1

with the Debtor on October 6, 2008, to sell certain quantities of "supersweet" corn to the Debtor. According to Hale Farms, the Debtor harvested and took possession of the corn in Oregon between October 6, 2008, and October 14, 2008.

The Corn Agreement provided that payment was to be made by the Debtor in three installments occurring on December 15, 2008; February 28, 2009; and April 30, 2009. The Corn Agreement also contained a clause stating that "[t]his contract shall be construed and enforced in accordance with the laws of the State of Washington." (Decl. Reeder, Ex. A, Dkt. #335.) According to Hale Farms, the Debtor made the first payment under the Corn Agreement but owes Hale Farms the second and third installments. Hale Farms asserts that the total amount owed by the Debtor under the contract is $148,938.64.

On June 3, 2009, the Debtor filed a voluntary Chapter 11 bankruptcy petition. Since then, the Debtor has been operating as a debtor-in-possession. Hale Farms now requests the Court to compel the Debtor to pay the amount owed under its claim and/or grant Hale Farms relief from the automatic stay. Hale Farms argues that it is entitled to a first priority lien under Oregon's "agricultural produce lien" statute, Or. Rev. Stat. §§ 87.700-87.740 (2009), for the corn it supplied to the Debtor. The parties, pursuant to the Court's Order Granting Motion to Approve Procedures for Administering Lien Claims waived the procedural requirements of Fed. R. Bankr. P. 7001 and requested summary disposition pursuant to Fed. R. Bankr. P. 7056.

The Court must consider (1) whether Hale Farms holds a valid statutory lien under Oregon law; (2) whether there is a conflict with Washington law when determining either the priority or validity of the Oregon lien; and (3) if there is a conflict of law, whether Washington or Oregon law should apply.

**A. Oregon's Agricultural Produce Lien & Washington's Processor Lien**

Initially, the Court must determine whether Hale Farms has a valid statutory lien under Oregon's "agricultural produce lien" statute. Under Or. Rev. Stat. § 87.705(1), a statutory lien is created in favor of any agricultural producer that sells produce. It arises by operation of law, and no other action on behalf of the seller is necessary to attach or perfect the lien. The statute provides that

MEMORANDUM DECISION - 2

"[a]n agricultural producer that delivers or transfers produce for consideration to a purchaser has a lien for the contract price of that produce, or for the reasonable value of the produce if there is no contract price." Or. Rev. Stat. § 87.705(1). The lien attaches to (1) any agricultural produce, whether in raw or processed condition, delivered or transferred to the purchaser by any agricultural producer; (2) all other inventory of the purchaser; and (3) proceeds from the sale of any agricultural produce by the purchaser. Or. Rev. Stat. § 87.705(1). The lien attaches on the date physical possession of produce is transferred to the purchaser. Because Hale Farms sold produce to the Debtor for consideration, if Oregon law applies, a statutory lien arose at the time of delivery. While this much is uncontested, the parties dispute whether or not the lien eventually expired.

Although the producer, at least initially, is not required to take any action to perfect the Oregon statutory lien, the lien will expire at the end of the 45th day after the final payment to the producer is due, unless the producer extends the lien by filing a notice of the lien with the Oregon Secretary of State before that time. Or. Rev. Stat. § 87.710(1), (2). Notice must also be made "to all persons that have filed a financing statement under Or. Rev. Stat. Chapter 79 that perfects a security interest in all or part of the same inventory, proceeds or accounts receivable." Or. Rev. Stat. § 87.710(3). This notice must be made within 20 days of filing notice of the lien with the Oregon Secretary of State. Or. Rev. Stat. § 87.710(4). Because the Debtor's final payment was due to Hale Farms on April 30, 2009, Hale Farms was required to extend the lien by June 14, 2009, in order to remain perfected. Hale Farms filed notice with the Oregon Secretary of State on June 9, 2009, in compliance with Or. Rev. Stat. § 87.710(3). It also sent notice to other persons that filed financing statements under Or. Rev. Stat. Chapter 79 within 20 days of filing notice of the lien as required by Or. Rev. Stat. § 87.710(4). Hale Farms therefore held a perfected statutory lien under Oregon law that continued until 225 days after the date that final payment to the producer was originally due. In this case, the lien remained effective until December 11, 2009—approximately a month and a half after Hale Farms brought this motion. Under Or. Rev. Stat. § 87.715, Hale Farms' valid lien is "prior and superior to all other classes of lien or any classes of security interest in the inventory, proceeds or accounts receivable of a

MEMORANDUM DECISION - 3

purchaser," without regard to when such other lien or security interest attaches. Or. Rev. Stat. § 87.715.

Washington's "processor lien" statute, RCW § 60.13.020, is similar to Oregon's "agricultural produce lien" statute. Under RCW § 60.13.020, a producer that delivers any agricultural product to a processor or conditioner has a first priority statutory lien that attaches to the agricultural product delivered, to the processor's or conditioner's inventory, and to the processor's or conditioner's accounts receivable. RCW § 60.13.020. The lien attaches on the date of delivery and continues, without notice, for 20 days after payment is due and still unpaid. The amount of the lien is the contract price for the product or, if no contract price, the fair market value of the products. RCW § 60.13.020. The producer may continue the lien by filing a statement evidencing the lien with the Washington State Department of Licensing after payment is due and unpaid. RCW § 60.13.040. If the statement is filed pursuant to RCW § 60.13.040 within 20 days, similar to the Oregon statute, the "processor lien" has priority over all other liens or security interests without regard to when the other liens or security interests attached. RCW § 60.13.050. Because Hale Farms did not file a statement evidencing the lien with Washington's Department of Licensing within 20 days after payment was due and unpaid, Hale Farms is not entitled to a Washington first priority "processor lien." The Court, having determined that Hale Farms holds a valid "agricultural produce lien" under Oregon law but does not hold a valid "processor lien" under Washington law, must now determine whether to apply Oregon or Washington law.

**B. Washington's and Oregon's Versions of Article 9**

The Committee contends that Washington and Oregon's Article 9 statutes dictate that Washington law should apply to agricultural liens. Each state's version of Article 9 contains a choice-of-law provision that relates to an "agricultural lien." Under Washington's RCW § 62A.9A-302 and Oregon's Or. Rev. Stat. § 79.0302, the local law of the jurisdiction in which farm products are located governs the perfection and priority of an "agricultural lien" on farm products. Thus, if Article 9 applies in this case, Washington law would govern whether Hale Farms holds a perfected agricultural lien on

MEMORANDUM DECISION - 4

farm products located in Washington and sold to the Debtor.  The Court, however, concludes that RCW § 62A.9A-302 and Or. Rev. Stat. § 79.0302 do not govern the validity or priority of Hale Farms' "agricultural produce lien" claim.  This is because the lien at issue in this case does not fit the definition of an "agricultural lien" under RCW § 62A.9A-102 and Or. Rev. Stat. § 79.0102.  Washington's version of the statute, which is substantially the same as Oregon's version, provides:

> "Agricultural lien" means an interest, other than a security interest, in farm products: (A) Which secures payment or performance of an obligation for: (i) Goods or services furnished in connection with a debtor's farming operation; or (ii) Rent on real property leased by a debtor in connection with its farming operation; (B) Which is created by statute in favor of a person that: (i) In the ordinary course of its business, furnished goods or services to a debtor in connection with a debtor's farming operation; or (ii) Leased real property to a debtor in connection with the debtor's farming operation; and (C) Whose effectiveness does not depend on the person's possession of the personal property.

RCW § 62A.9A-102(5).  Thus, the statutory definition of "agricultural lien" applies to liens created in favor of persons providing goods or services to the producer.  It does not apply to "processor liens," which are created in favor of a producer that sells its agricultural product to a processor or conditioner.  Moreover, "debtor" refers, in the statute, to a person having interest in the collateral other than a security interest or other lien.  RCW § 62A.9A-102(28)(A).  That is, the "debtor" in the case of an "agricultural lien," is the producer.  Because in the case of Oregon's and Washington's statutory liens the producer, not the "debtor," is the person holding the lien as well as the other interest in the collateral, the statutory liens at issue in this case are not "agricultural liens" under the definition provided by Article 9.

Finally, Washington's version of Article 9 does not apply to the extent that another state's statute, "other than a statute generally applicable to security interests, expressly governs creation, perfection, priority, or enforcement of a security interest created by the state."  RCW § 62A.9A-109(c)(3).  Oregon's "agricultural produce lien" statute, which was not enacted as part of Oregon's version of Article 9, expressly governs the lien's creation, perfection, and priority.  Because the lien statute does not apply to security interests generally, it is not covered by Washington's Article 9.  Nor does Oregon's version of Article 9 apply to the Oregon lien statute.  This is because Oregon has a

MEMORANDUM DECISION - 5

provision, Or. Rev. Stat. § 79.0109(3)(b), that is identical to RCW § 62A.9A-109(c)(3). Hale Farms' failure to comply with either state's version of Article 9 does not therefore affect the creation or perfection of a statutory lien, nor does it control the Court's choice-of-law analysis. The Court must therefore look outside of Washington's and Oregon's Article 9 provisions in order to determine which state's law should apply.

**C. Conflict-of-Laws Analysis**

The Committee argues that, under a conflict-of-laws analysis, Washington law should apply to the determination of whether Hale Farms holds a first priority lien, and because Hale Farms did not meet the requirements of Washington's "processor lien" statute, it does not have a first priority lien. Hale Farms argues that Oregon law should apply because (1) there is no conflict of law, and (2) even if there is a conflict, Oregon should apply under a conflict-of-laws analysis. It is Hale Farms' position that no conflict between Oregon and Washington law exists because the "processor lien" statute of Washington operates independently of Oregon's Or. Rev. Stat. §§ 87.700-87.740.

Before undergoing a conflict-of-laws analysis, the Court must first determine whether an actual conflict between the Oregon and Washington lien statutes exists. See Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1234 (11th Cir. 1995); Oil Shipping B.V. v. Sonmez Denizcilik Ve Ticaret A.S., 10 F.3d 1015, 1018 (3d Cir. 1993); Barron v. Ford Motor Co. of Canada Ltd., 965 F.2d 195, 197 (7th Cir. 1992). Generally, a conflict exists where "two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result." Estate of Miller v. Thrifty Rent-A-Car Sys., Inc., 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009).

The Court concludes that there is an actual conflict between Washington and Oregon law in this case because the determination of whether Hale Farms has a first priority lien differs depending on whether the Court applies Oregon or Washington law. First, if Washington law were to apply to Hale Farms, it would have no lien whatsoever. See Buffalo Molded Plastics, Inc. v. Plastic Mold Tech., Inc. (In re Buffalo Molded Plastics, Inc.), 354 B.R. 731, 751 (Bankr. W.D. Pa. 2006) (stating that a true conflict existed where the resolution of the claims differed dramatically depending on the applicable

MEMORANDUM DECISION - 6

law). Even if the Oregon statute only applies to Oregon producers, and the Washington statute only applies to Washington producers, a conflict still arises in the determination of the liens' priority as Washington's processor's lien is a "first priority lien," yet Oregon's agricultural lien at issue is also given "first priority" under Or. Rev. Stat. § 87.715. The priority of competing agricultural liens or security interests is normally determined under Article 9 of the Uniform Commercial Code (UCC), as adopted by Oregon and Washington. While the Revised UCC, adopted by Oregon and Washington, expanded to include "agricultural liens," it does not cover, as explained supra Sec. B, state statutory liens such as Washington's "processor lien" and Oregon's "agricultural produce lien." Moreover, no choice-of-law statute adopted by both Oregon and Washington exists outside of Article 9 that would determine which lien has priority. Therefore, neither Washington nor Oregon has a statutory directive as to which state's law should apply where producers from more than one state are competing for priority under separate processor lien statutes. Moreover, each state has a legitimate interest in a particular set of facts in the litigation. Oregon has a legitimate interest in protecting its agricultural producers, including Hale Farms, who sell goods to agricultural processors. Similarly, Washington has a legitimate interest in protecting Washington producers by giving them a first priority lien, and in establishing the priority of liens against a Washington debtor's assets. The Court must therefore undertake a conflict-of-laws analysis to determine whether to apply Washington or Oregon law.

In the Ninth Circuit, where a court has exclusive jurisdiction over a federal question case, as in a bankruptcy case, the court should apply federal choice-of-law rules rather than the choice-of-law principles of the forum state. Mandalay Resort Group v. Miller (In re Miller), 292 B.R. 409, 413 (9th Cir. BAP 2003); In re Vortex Fishing Sys., Inc., 277 F.3d 1057, 1069 (9th Cir. 2002); Lindsay v. Beneficial Reinsurance Co. (In re Lindsay), 59 F.3d 942, 948 (9th Cir. 1995). This rule differs from the rule in diversity cases where federal courts must apply the conflict-of-laws principles of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The Ninth Circuit Court of Appeals (Ninth Circuit) reasoned in Lindsay that in federal question cases there is no need to reduce the risk of forum shopping by applying state choice-of-law rules. Lindsay, 59 F.3d at 948. The Court follows the

MEMORANDUM DECISION - 7

governing Ninth Circuit case law and applies federal choice-of-law rules in determining whether Oregon or Washington law should apply.

Federal choice-of-law rules follow the Restatement (Second) of Conflict of Laws in determining which state's law to apply. Miller, 292 B.R. at 413. Where the validity and effect of a security interest is at issue, the Restatement asks which state law bears the more "significant relationship to the parties, the chattel, and the security interest." Restatement (Second) of Conflict of Laws § 251; See Holiday Airlines Co. v. Pacific Propeller, Inc. (In re Holiday Airlines Co.), 620 F.2d 731, 733 (9th Cir. 1980). The Committee and Hale Farms both appropriately argue that the "most significant relationship" test of Restatement § 251 should control the Court's analysis. The Restatement (Second) of Conflict of Laws § 251 provides that:

> (1) The validity and effect of a security interest in a chattel as between the immediate parties are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the security interest under the principles stated in § 6.
> (2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel at the time that the security interest attached than to any other contact in determining the state of the applicable law.

Restatement (Second) of Conflict of Laws § 251. While § 251 refers to a "security interest," the section also applies to non-consensual liens that "arise by operation of law and are not dependent upon the intentions of the parties." Restatement (Second) of Conflict of Laws § 251 cmt. f. Thus, the section applies to statutory liens such as Oregon's "agricultural produce lien" and Washington's "processor lien." See Buffalo Molded, 354 B.R. at 752-53 (applying Restatement (Second) of Conflict of Laws § 251 to a non-consensual lien created by the Michigan Tooling Lien Act).

The comments to § 251 give further guidance to courts as to how the "most significant relationship" determination should be made. Comment e states that "greater weight will usually be given to the location of the chattel . . . at the time the security interest attached than to any other contact." However, the comments make clear that the significance of the chattel's location at the time of attachment is dependent upon the intended permanence of that location. If the parties understand that the chattel "will be kept only temporarily in the state where it was located at the time the security

MEMORANDUM DECISION - 8

interest attached," it is more likely that some other state will have the most significant relationship to the parties and be the state of the applicable law. Restatement (Second) of Conflicts of Law § 251 cmt. e.

The Court's analysis under the "most significant relationship" test is also guided by the choice-of-law principles outlined in Restatement (Second) of Conflict of Laws § 6. That section provides that relevant factors a court should consider include: the needs of the interstate system; the relevant policies of the forum; the relevant policies of other interested states and the interests of those states in the determination of the issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6.

The Court found scant case law on the particular issue, and the parties provided little, if any, case law of their own to support their conflict-of-laws arguments.[1] The Court does, however, find the Buffalo Molded case instructive. Buffalo Molded, 354 B.R. at 752-58. In that case, the court considered whether Pennsylvania's UCC law governed the determination of priority in competing liens between a bank and a subcontractor of the debtor, or whether it should apply a non-consensual Michigan tooling lien statute under which the subcontractor held a perfected lien. Buffalo Molded, 354 B.R. at 752-58. The court first determined that there was a conflict between Pennsylvania and Michigan law because under Pennsylvania law, the bank's security interest would have priority over the subcontractor's lien, and under the Michigan Tooling Act, Mich. Comp. Laws § 445.619, the subcontractor's lien would have had priority over the bank's security interest. Buffalo Molded, 354 B.R. at 751. The court then applied Pennsylvania's choice-of-law approach under which the court first applies the "most significant relationship" test "as a starting point and then flesh[es] out the issue using

---

[1] Hale Farms cites Istim, Inc. v. Chemical Bank, 581 N.E.2d 1042 (N.Y. 1991), and Goodyear Tire & Rubber Co., v. McDonnell Douglas Corp., 820 F. Supp. 503 (C.D. Cal. 1992), in support of its argument that a conflict-of-laws analysis leads to the application of Oregon law. Neither case applies the "most significant relationship" test of the Restatement (Second) of Conflicts of Law. Rather, in both cases the courts apply the "interests analysis" of New York's choice-of-law rules.

MEMORANDUM DECISION - 9

an interest analysis." Buffalo Molded, 354 B.R. at 752 (citing Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006)).

Ultimately, the court held that Pennsylvania law should apply. Buffalo Molded, 354 B.R. at 757. The court, in concluding that Pennsylvania had the "most significant relationship" to the parties, chattel, and security interest, relied on the fact that the intended permanent location of the tooling was Pennsylvania, and that the tooling was ordered from Pennsylvania by a Pennsylvania company. Buffalo Molded, 354 B.R. at 754 (citing Restatement (Second) of Conflict of Laws § 251 cmts. e, g). The court reached this conclusion even though the tooling was manufactured in Michigan, and despite the fact that the lien attached and was perfected in Michigan. Buffalo Molded, 354 B.R. at 753. The court went on to weigh the fact that Pennsylvania had the "most significant relationship" against the Restatement § 6 policy-oriented factors. It emphasized that for property law issues, the protection of justified expectations—which helps create "certainty, predictability and uniformity of result"—is of considerable importance. Buffalo Molded, 354 B.R. at 755 (citing Restatement (Second) of Conflict of Laws §§ 222, 6(2)(d) (1971)). According to the court, the underlying policies behind Pennsylvania's enactment of the UCC "involved simplification, clarification and modernization of the law governing commercial transactions." Buffalo Molded, 354 B.R. at 755. Under Section 9301(a) of Pennsylvania's version of the UCC, the local law where the debtor is located controls the applicable law governing the perfection, effect, and priority of a security interest. 13 Pa. Cons. Stat. § 9301(a). The court stated that "[b]ecause of the nationwide adoption of the UCC . . . applying the Pennsylvania UCC . . . serves to protect the justified expectations of parties when dealing in a commercial setting and promotes the values of certainty, predictability and uniformity of result." Buffalo Molded, 354 B.R. at 756. The court went on to state that despite Michigan's enactment of the Michigan Tooling Lien Act, Michigan's policies are also advanced by the application of the Pennsylvania UCC because Michigan has adopted the UCC as well. Buffalo Molded, 354 B.R. at 756-57.

The Court, in consideration of Restatement § 251, concludes that Washington has the "most significant relationship" to the parties and the produce. The Court, like the court in Buffalo Molded,

MEMORANDUM DECISION - 10

gives particular weight to Comment e of Restatement § 251. In this case, while the agricultural produce was located in Oregon when the Oregon lien attached, Oregon was not the intended permanent location of the produce just like Michigan was not the intended permanent location of the tooling. Hale Farms should have been aware that the corn would be located in Oregon only temporarily, and that it would be transported to the Debtor's processing plant in Washington within a relatively short period of time. Under the Restatement approach, the location of the chattel at the time of attachment is usually given more weight in the analysis. However, the transaction at issue is not the "usual case" because the intended permanent location of the agricultural produce was in Washington. The Court therefore determines that Washington, before considering the policy factors of § 6, has the "most significant relationship" to the parties, the agricultural produce, and the lien.

The Court also concludes that the factors outlined in Restatement (Second) of Conflict of Laws § 6 weigh in favor of applying Washington law over Oregon law. In consideration of the relevant policies of each state, the Court determines that Washington's policies behind its "processor lien" statute and Oregon's policies behind its "agricultural produce lien" statute are similar. An analysis of legislative history is unnecessary to understand that both states seek, in the creation of a first priority lien, to protect in-state producers by helping to ensure payment for their produce. While the policies underlying each statute are similar, Washington's interest in having its law applied is greater where, as here, the Debtor is located in Washington and the Oregon producer was aware the produce would be transported to Washington.

In addition to the fact that the intended permanent location of the produce was Washington, the application of Washington law under Restatement § 251 is supported by its effect of protecting justified expectations of parties engaged in commerce, and creating certainty in the market. Both states' statutory schemes grant a lien in favor of agricultural producers without requiring them to file notice in a central filing system until a number of days after payment has become due. Despite the fact that both statutes create a "secret lien" initially, the statutes attempt to mitigate whatever effect a lack of notice would have on commerce by eventually requiring notice. Nonetheless, notice under the Oregon

MEMORANDUM DECISION - 11

statute is only given to those filing financing statements under Oregon law. Moreover, there is no statutory choice-of-law directive that applies to state statutory liens and that gives creditors, who have no constructive notice of the liens, an idea as to which state statutory laws may apply. In choosing whether to apply Oregon or Washington law, the Court seeks to protect justified expectations and create some "certainty of result" by giving parties an idea of which law applies given the location of the debtor and the intended permanent location of the collateral.

Generally, the law governing perfection and priority of security interests is the law of the jurisdiction where the debtor is located. See RCW 62A.9A-301(a). The purpose of the "central filing" system of the UCC is to relieve creditors from having to undertake the burdensome task of searching every possible state in which a creditor could file for other secured claims, as well as giving a creditor seeking secured status a single state's law under which to file and perfect. While the UCC does not apply to the liens at issue in this case, Oregon and Washington's adoption of Article 9 expresses each state's desire "to create further commercial certainty and predictability." Buffalo Molded, 354 B.R. at 756 (citing 68A Am.Jur.2d Secured Transactions § 2 (2006)). The purpose of the UCC and a central filing location is therefore persuasive in the Court's analysis under Restatement § 251.

While Oregon may have a notice requirement under its statute, out-of-state creditors dealing with a Washington debtor would have little reason to check with the Secretary of State in Oregon for other secured claims against the debtor. Generally, due to all 50 states' enactment of revised Article 9, creditors would have reason to check only the central filing system of the state in which the debtor is located. Applying Washington law under these circumstances limits the possibility of any number state statutory liens affecting the collateral, and gives clearer guidance to creditors dealing with conditioners and processors in determining exactly which first priority liens may exist. In this way, applying Washington law furthers the § 6 policies of protecting "justified expectations" and creating "certainty, predictability, and uniformity of result."

The Court is mindful of the policy implication were it to apply Oregon law instead. Namely, the fact that if statutory liens such as Oregon's "agricultural produce lien" were to apply to a debtor outside

MEMORANDUM DECISION - 12

the producer's state on property located beyond the producer's state, any creditor dealing with a processor or conditioner would have be aware of the possibility that a "secret lien" of any state may affect the debtor's assets regardless of location of the debtor and the location of the debtor's assets. Where creditors believe that Washington law controls, they need only be mindful of Washington's statutory liens. An unacceptable result may stem from the application of Oregon's law in this case: Washington producers with a first priority statutory lien under Washington law against a Washington debtor's assets located in-state may be trumped by an out-of-state lien for which they were provided no notice.

The parties' choice-of-law designation lends additional support to the Court's application of Washington law. Subsection (2) of Restatement § 251 begins with the phrase "in the absence of an effective choice of law," which means that a contractual designation is, if not controlling, at least relevant to the conflict-of-law analysis. Because Restatement § 251 also applies to statutory liens, the Court is not convinced by Hale Farms' argument that a choice of law in the parties' contract should not be relevant in the Court's determination of whether to enforce a non-consensual lien. Comment e to Restatement § 251 states that "the validity and effect of a security interest, created by agreement of the parties . . . will be determined . . . by the law chosen by the parties under the circumstances stated in § 187. However, under Restatement (Second) of Conflict of Laws § 187(1), which applies to contracts, "the law of the state chosen by the parties to govern their contractual rights will be applied if the issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Hale Farms argues that Or. Rev. Stat. § 87.705(4), which voids an agreement to waive the right of a producer to file notice under the statute, makes the issue one which the parties could *not* have resolved by an explicit provision.

It is unnecessary for the Court to determine the issue of whether the contractual designation definitively controls the choice-of-law issue. Rather, the Court has decided that, at a minimum, the designation is one more consideration that weighs in favor of applying Washington law under the "most significant relationship" test of Restatement (Second) of Conflict of Laws § 251.

MEMORANDUM DECISION - 13

**D. Comity & Extraterritoriality**

Additionally, and as an alternative holding, the Court concludes that principles of extraterritoriality prohibit it from enforcing the Oregon's "agricultural produce lien" beyond Oregon's borders. The Court notes that the doctrine of extraterritoriality is an additional ground upon which a court may deny enforcement of a statutory lien against an out-of-state debtor. See, e.g., Chicago Title & Trust Co. v. Fox Theatres Corp., 105 F.2d 147, 148 (2d Cir. 1939) (rejecting application of Georgia lien statute where no proof was made that property subject to lien was located in Georgia); J.T. Fargason Co. v. Furst, 287 F. 306, 309 (8th Cir. 1923) (Arkansas landlord lien has no extraterritorial effect when crop has left state); In re R.F. Cunningham & Co., 355 B.R. 408, 418 (Bankr. E.D.N.Y. 2006) (holding that Ohio statutory agricultural lien had no effect beyond Ohio's boundaries).

In Cunningham, the court confronted the effect of Ohio Rev. Code Ann. § 926.021, an Ohio statutory agricultural lien, on property of a New York debtor. The court held that the Ohio statute was "inoperative with respect to the property of the Debtor outside of Ohio." Cunningham, 355 B.R. at 418. The court cited the case law dealing with landlord lien statutes and relied on the fact that the parties conceded that there was no property within Ohio to which the lien would attach. The court also quoted the U.S. Supreme Court's holding in Marshall v. New York, 254 U.S. 380, 385 (1920) that the "priority of the state extends to all property of the Debtor within its borders." Similarly, the Court believes that the Oregon lien statute at issue in this case is ineffective beyond Oregon's borders under the doctrine of extraterritoriality.

Hale Farms briefly argued that the principle of comity does not support the contention that Washington law should apply to the creation and priority of a lien on crops grown in Oregon. Comity allows the Court to recognize "the law of other states unless doing so would be prejudicial to the interests of the resident state." Buffalo Molded, 354 B.R. at 757. The Court is not required to apply the doctrine: it is "more of a courtesy and accommodation than anything else." Buffalo Molded, 354 B.R. at 757. In the Cunningham case, the court declined to give effect to the statute under the principle of comity. Cunningham, 355 B.R. at 418. It distinguished the case from Ne. Miss. Elec.

Power Coop. v. Eddingfield (In re Eddingfield), 67 B.R. 1000, 1004 (Bankr. C.D. Ill. 1986), which gave extraterritorial effect to a statutory lien on grounds that the debtor and creditor asserted that injury would result were the court to give effect to the statute. Cunningham, 355 B.R. at 418. Unlike the affected parties in Cunningham, the affected party in Eddingfield did not object to the court granting effect to a landlord's lien statute on the basis of comity. Moreover, the court stated that the affected creditor knew that the crops in which it was acquiring an interest were grown on leased premises. Eddingfield, 67 B.R. at 1004. The Cunningham court, in declining to grant effect to the Ohio statute on the principle of comity, also reasoned that the "entire priority and distribution scheme of the Bankruptcy Code would be disrupted if this Court granted comity to the Ohio lien." Cunningham, 355 B.R. at 418.

In this case, similar to Cunningham, the affected lenders and parties have raised objections to giving Oregon's agricultural produce lien effect. Moreover, while Washington producers had reason to believe that Washington liens encumbered the Debtor's property located in-state, they had little reason to believe that an Oregon statutory lien encumbered the property. For these reasons, the Court agrees with the reasoning of the Cunningham court that granting effect to the Oregon statute would disrupt the priority scheme of the Bankruptcy Code, which seeks to distribute the bankrupt's assets ratably among creditors. In re Lewis F. Shurtleff, Inc., 778 F.2d 1416, 1420 (9th Cir. 1985).

**E. Conclusion**

The Court holds that Washington law applies to the determination of whether Hale Farms has a valid statutory lien on the Debtor's assets. Accordingly, applying Washington law, Hale Farms does not hold a valid statutory lien.

DATED: April 2, 2010

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge